UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-20539-CR-SEITZ

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

CESAR MENENDEZ a/k/a
"CESAR MENDEZ,"                                **REPORT AND RECOMMENDATION**

        Defendant.
_____/

On or about 7/12/07, court-appointed defense counsel Jeffrey E. Feiler of Jeffrey E. Feiler P.A., submitted a voucher (No. FLS 05 1342) with appended time sheets requesting $30,562.40 for attorney's fees and costs pursuant to the Criminal Justice Act ("fee request"). Mr. Feiler ("counsel") represented Defendant Cesar Menendez ("Defendant" and/or "Menendez") for approximately 11 months, from counsel's appointment on 5/4/05 to 4/7/06, through a 12-day jury trial and Defendant's acquittal. Since counsel's fees exceed the $7,000 statutory maximum, *18 U.S.C. §3006A(d)(2) (2000 & Supp. 2005)*, the voucher was referred to the undersigned for a Report and Recommendation as to the appropriateness of the fees requested. *28 U.S.C. Sec. 636(a); Local Magistrate Judge Rules*.

The CJA at *18 U.S.C. §3006A(d)(1)* provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. *18 U.S.C. §3006A(d)(5); USA v. Griggs, 240 F.3d 974 (11th Cir. 2001)*. If the recommended fee amount exceeds the statutory maximum, however, the district court must certify that the case involves "extended" or "complex" representation, and that the amount is necessary to provide counsel with fair

compensation. *18 U.S.C. §3006A(d)(3)*. If the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case, the case may be considered "complex." *Guidelines for the Administration of the Criminal Justice Act and Related Statutes, Vol. 7, Guide to Judiciary Policies and Procedures, Sec. A, Ch. 2, Part C §2.22B(3)*. If more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings, the case may be considered "extended." *Id.*

## DISCUSSION

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator reviewed the voucher for compliance with CJA guidelines and mathematical accuracy prior to the undersigned's review. The administrator reviewed the $8,822.80 billed for 95.90 in-court hours @ $92/hour. After verifying the in-court time with the Court's minutes, the administrator reduced the amount claimed to $8,818.80, to reflect the applicable CJA hourly fees.[1]

The CJA administrator reviewed the $21,739.60 billed for 236.30 out-of-court hours as follows: 88.30 hours for "Interviews and conferences"; 110 hours for "Obtaining and reviewing records"; 2 hours for "Legal research and brief writing"; and 36 hours for "Travel time." The administrator reduced the "Travel time" by 4 hours to account for unsubstantiated travel reported (4/30/05 "Travel to Miramar"; 8/3/05 "Travel to Courthouse"). The administrator also adjusted the modified out-of-court compensation claimed downward to $21,145.60, again, to reflect the applicable CJA hourly fees.[2] No expenses were claimed.

The grand total claimed, as adjusted, is now **$29,964.40.**

---

[1] The non-capital hourly panel attorney compensation rate increased from $90/hour to $92/hour for work performed on or after 1/1/06.

[2] See note 1.

## *Undersigned's Review and Recommendation*

In making this recommendation, the undersigned reviewed the entire voucher, the time sheets submitted, and case record as it relates to counsel's representation of Defendant Menendez. This Court also considered counsel's 9/28/07 letter and supplemental letters of 10/16/07 and 10/24/07 submitted in support of his fee request, as requested.

As a matter of background, this was a complex fraud case arising from months of investigation by the government and which resulted in a 15 page, 33-count indictment charging five (5) individuals with a sophisticated and aggressive scheme to defraud investors located throughout the country into purchasing payphone business opportunities for substantial sums of money. Public Telephone Corporation ("PTC") was the corporation which, through telemarketing, the defendants sold these business opportunities to own and operate payphones. The government charged that from in or about January 2003 through in or about September 2003, the defendants falsely advertised for customers through unsolicited facsimiles sent to individuals and businesses throughout the United States and classified advertisements made available nationwide through the Internet and other media across the country. *Inter alia*, the defendants fraudulently claimed that it was a business partner of AT&T and a member or affiliate of the Better Business Bureau, and used outdated financial information to claim that substantial profits that could be earned by investing in payphone business opportunities and which resulted in the misappropriation of approximately $2 million from potential purchasers. Defendant Menendez was one of the several telemarketers who worked for PTC and who allegedly personally solicited sales from potential investors.

Defendant was charged in eight counts with: Conspiracy to commit mail and wire fraud (count 1); Mail fraud (Counts 8-9, 12); and Wire fraud (Counts 27, 29-30, 32). Defendant was arrested

on June 28, 2005. The same day, Defendant appeared before the Court for his initial appearance, at which counsel Jeffrey E. Feiler, a Miami practitioner, was appointed as Defendant's counsel of record. After a hearing, the Court released Defendant on bond. The case went to trial on 3/20/06 with Defendant and two co-defendants. The trial lasted twelve (12) days which took place over the course of almost three (3) weeks. On 4/7/06, the jury ultimately acquitted Defendant on all counts as charged. On 4/10/06, the Court entered a Judgment of Acquittal on all counts enumerated in the Indictment against Menendez. Approximately fifteen months later, on or about 7/12/07, counsel submitted his fee request.[3]

As for the voucher and the adjusted $21,145.60 claimed for out-of-court fees[4], I have reviewed the entries listed on the time sheets and the total time claimed for each of the task categories.

As for the 88.30 hours listed for "Interviews and Conferences," the time sheets reveal that the majority of this time was for meetings with the client. Counsel explained that he spent substantial time meeting with his client in order that Menendez could explain his involvement in four separate businesses which were the subject matter of the fraud. Each business had unique operating systems which needed explanation. The government considered the business practices fraudulent. Each business had numerous operators, managers, sales personnel and support staff who were considered conspirators. And, each business had hundreds of alleged victims, many of whom Menendez had as customers. Counsel needed Menendez to explain the relationships and representations he made in

---

[3] As for the untimely submission of the fee request, counsel explained that he is a sole practitioner with a busy law practice. Between 2006 and 2007, he had a few trials he was working on including a 3-month federal trial which required him to travel to Cambodia for witness statements. The undersigned points out, however, as a cautionary measure, that the Supplemental Instructions for Completing CJA Form 20 Vouchers (par. no. 4.) states that CJA counsel are instructed to submit their CJA Form 20 vouchers "NO LATER THAN 45 DAYS AFTER FINAL DISPOSITION OF THE CASE (or counsel's withdrawal from case)." The Court's administrator also advises that the rule has rarely been enforced by the judges of this Court.

[4] The undersigned generally defers to the Court clerk to verify all in-court time and expense allowances.

order to effectively represent him.

As for the 110 hours reported for "Obtaining and reviewing records," the time reported included both discovery review and preparation for the 12-day trial. Further, as the case record reveals, and as counsel explained, this was clearly a lengthy and complex case, based upon the number of defendants, the nature of the fraud charges, and the large number of alleged victims and witnesses residing throughout the United States, and "hundreds of instances of alleged fraud." The discovery produced was voluminous requiring the government's eleven (11) filed responses to the Standing Discovery Order " [see docket entry nos. 56, 66, 75, 85, 89, 91, 95, 101, 105, 116, 121]. Counsel described the production as "approximately 250,000 relevant documents," including telephone, bank, mail, and business records, 404(b) evidence, recorded statements, audio recordings, transcripts, evidence from other business ventures, etc.

The trial included three defendants and, as mentioned, lasted twelve days over the course of almost three weeks. Counsel reported that the government produced at trial, *inter alia,* numerous witnesses who were alleged co-conspirators who entered into plea agreements, alleged victims of the fraudulent activities, witnesses from the business where Menendez worked, a substantial number of documents to support the fraud allegations including mail and phone records which documented the transactions and undercover recordings to prove *mens rea.* Counsel explained that he needed to be prepared for each witness and each document to demonstrate that his client was not acting with intent to commit fraud. Apparently, counsel did an excellent job obtaining optimal results for his client.

In checking in-court time reported, the Court clerk noted a discrepancy in counsel's reported in-court trial time as compared to the Court's records for actual trial time, as listed on pages 1&2 (top) of the time sheets. Counsel Feiler explained, however, that the time he reported included all of the time that he was actually working on this case, through the lunch breaks, preparing for the next witness

or on another trial issue and that he remained at the Courthouse during all of the allowed breaks.

In conclusion, I am satisfied that counsel documented the actual time he spent on the case. I find the time billed to be justifiable, reasonable and fair.[5] Notwithstanding the results obtained, considering the number of defendants and charges involved, the massive amount of discovery produced and the work required to prepare this case for a lengthy trial, I also consider this matter to be "extended" if not "complex," justifying compensation in excess of the $7,000 statutory maximum.

## CONCLUSION

In sum, based upon my review of the voucher, having personally reviewed the time sheets and the case record as it relates to counsel's voucher, I am **RECOMMENDING** that counsel be paid the **$29,964.40** adjusted claim ($8,818.80 in-court time + $21,145.60 out-of-court time), as fair compensation for his work on this case.

In accordance with 28 U.S.C. §636(b)(1)(c), the parties shall have ten (10) days from receipt of this Report and Recommendation in which to serve and file any written objections with the Honorable Patricia A. Seitz, United States District Judge.

Respectfully submitted this 25 day of October, 2007.

PETER R. PALERMO
SR. UNITED STATES MAGISTRATE JUDGE

cc:  District Judge Patricia A. Seitz
     Jeffrey E. Feiler, Esq.
     Lucy Lara, CJA administrator

---

[5] This Court also notes that counsel did not bill for any of his expenses.

-6-